**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 18–89 (JRT/DTS) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| MARQUIS WILLYJOHN TUCKER, | |
| Defendant. | |

Erica H. MacDonald, United States Attorney, and Jeffrey Paulsen, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Keala C. Ede, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

Defendant Marquis Tucker was indicted for being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). (Indictment, Apr. 18, 2018, Docket No. 1.) Tucker filed a Motion to Suppress evidence discovered after a police officer's stop, pat down, and warrantless search of his person. (Mot. to Suppress, June 14, 2018, Docket No. 19.) Additionally, he filed a Motion for Disclosure of a government informant and to compel the government to make the informant available for interview. (Mot. for Disclosure, June 14, 2018, Docket No. 25.)

Magistrate Judge David Schultz held a motions hearing on July 9, 2018. (Min. Entry for Mot. Hr'g, July 9, 2018, Docket No. 31.) Subsequently, he took supplemental briefing on the above motions. In an Order and Report and Recommendation ("R&R"), Magistrate Judge Schultz

recommended denying Tucker's Motion to Suppress and denied his Motion for Disclosure.[1] (Order and R. & R. at 9–10, Sept. 24, 2018, Docket No. 45.) Tucker objected to both the recommendation and the order, and specifically objected to several factual findings made by the Magistrate Judge. (Def.'s Obj. to R. & R., Oct. 9, 2018, Docket No. 46.) Because the Court concludes that the challenged police action was constitutional, the Court will adopt the recommendation of the Magistrate Judge and deny Tucker's Motion to Suppress. Additionally, because the Magistrate Judge did not err in denying the Motion for Disclosure, the Court will overrule Tucker's objection.

## BACKGROUND

The facts of this case come largely from the testimony of two police officers. Because the Court will adopt the facts found by the Magistrate Judge without change, and because the Magistrate Judged relied almost exclusively on the testimony of those officers, the Court will cite directly to the underlying testimony.

In early 2018, the city of St. Paul police received a tip from a confidential informant that a man named Kevin White was dealing drugs around the area of the Twins Market in east St. Paul. (Tr. of Mot. Hearing ("Tr.") at 13:20-15:6, July 16, 2018, Docket No. 34.) Police used the informant on two occasions in early 2018 to conduct controlled buys from White. (*Id.* at 15:7–17:11.) One of the previous two buys took place in the Twins Market parking lot, the other took place about six blocks from the Twins Market. (*Id.* at 16:19–17:7.) Police then initiated a plan to set up a third controlled buy—using the same informant—on March 27, 2018 with the intent to

---

[1] Magistrate Judge Schultz also recommended denying a motion filed by Tucker to suppress statements, admissions, and answers as moot. Because Tucker does not object to this recommendation, the Court will adopt it.

arrest White afterwards. (*Id.* at 17:12–15.) On that day, police set up surveillance and observed White drive to and park near Margaret Park, a public park five blocks from the Twins Market. (*Id.* at 19; 26:20–27:4.) Officer Colby Bragg was the informant's main handler, and the informant was in Bragg's car when White arrived at the park. (*See id.* at 16; 20.)

Before he exited the vehicle, Bragg checked the informant to ensure that he did not have drugs on him. (*Id*. at 20:8–10.) Then, as planned, the informant exited Bragg's vehicle and began walking to White's car. (*Id*. at 20:23–21:4.) Bragg was able to see the informant the entire time. (*Id*. at 41:7–18.) After spending approximately two minutes at White's car, the informant walked away and, shortly after that, called Bragg and told him that he had made the purchase. (*Id.* at 21:3–15.) The informant than made her way back to Bragg's car, where she handed Bragg what appeared to be crack-cocaine. (*Id.* at 21:24–22:22.) At that point, Bragg ordered other officers, who were positioned in the surrounding neighborhood, to move in on White and make the arrest. (*Id.*) Five to ten minutes elapsed from the time that the informant left White's car to the time that Bragg gave the order to move in. (*Id.* at 22:12–16; 43:9–12.)

Officer Joseph Sauro was one of the officers on the arrest team. While he was awaiting Bragg's order to move in, he was parked a few blocks away from White, and could not see him or his vehicle. (*Id.* at 62:24–63:6.) However, Sauro was already familiar with White, and testified that "it had been rumored that [White] had had guns or [went] along with people who had guns." (*Id.* at 49:23–50:2.) When Sauro received word from Bragg that the informant made the purchase and that he could move in to make the arrest, he and the other two officers in his car quickly made their way to White's location. (*Id.* at 51:1–21.) While Sauro was en route, another unidentified officer warned over the radio to "be advised of those other guys that were buying." (Gov't Ex. 2 (body camera footage), on file with Court*; see also* Tr. at 63:11–64:17.)

Upon turning onto the street that White was parked on, Sauro saw the target vehicle and saw two males near the car. (Tr. at 52:25–53:4.) One was leaning into the vehicle, the other, defendant Marquis Tucker, was about a foot behind the first male. (*Id.* at 53:5–8.) At this time, no one on the arrest team, or Bragg, had any prior knowledge of Tucker, nor was he a target of their investigation. (*Id.* at 45:3–8, 50:3–6.) Nevertheless, when Sauro arrived at White's car he told everyone to show their hands. (*Id* at 53:12–18.) He then approached White's car and, as he did so, noticed a bag of marijuana on the center console. (*Id.* at 53:16–17, 54:10–17.) Sauro's training and experience led him to believe the bag could've either been for personal use or for sale to others. (*Id.* at 73:2–16.) He also noticed that there were two additional people in White's car. (*Id.* at 55:22–56:1.)

Sauro then proceeded to handcuff Tucker and patted him down. (*Id.* at 56:2–9.) He immediately felt a handgun in the waistband of Tucker's pants. (*Id*. at 56:7–15.) Sauro removed the gun and detained Tucker while he attended to the other individuals at the scene. (*Id.* at 57:7–19.) Shortly thereafter, Sauro conducted a check of the firearm's serial number, and was notified that it was stolen. (*Id.* at 58:17–23.) At that point, Tucker was arrested and fully searched by another officer, who found crack-cocaine in one of Tucker's pockets. (*Id.* at 59:2–18.)

## DISCUSSION

**I.  FACTUAL OBJECTIONS**

As an initial matter, the Court considers Tucker's legally relevant factual objections. When reviewing the factual findings of a Magistrate Judge, the Court conducts a de novo review, and at a minimum must "consider the actual testimony" underlying the factual findings in order to "make[] its own determinations of disputed issues." *Branch v. Martin*, 886 F. 2d 1043, 1046 (8th

Cir. 1989). Tucker urges the Court to reconsider the two officers' testimony and to decline to adopt certain facts which were found by the Magistrate Judge and based on that testimony.

First, Tucker objects to the Magistrate Judge's finding that Bragg and his informant had executed two controlled buys before the March 27 controlled buy. He argues that the existence of those two controlled buys was not sufficiently established because Bragg did not give any specifics about the controlled buys during his testimony, the government never produced any police reports from those two controlled buys, and because the informant did not testify.[2] Having reviewed the testimony, the Court credits the testimony of Bragg on this issue and sees no reason to doubt his credibility. Bragg testified and was cross-examined extensively about the prior controlled buys, provided the location and approximate location of them, and stated that White drove the same vehicle in all three of the controlled buys where he used the informant. (Tr. at 16:19–17:7, 17:24–18:4.) Because the Court finds the testimony credible, the Court adopts this finding of fact.

Second, Tucker objects to the finding that Bragg was able to see the informant from the time he left Bragg's car to the time he returned, as Bragg testified. In support of his argument, Tucker provided several maps and photos which highlight the distance between where Bragg was parked and where White was parked as well as the potential visual obstructions between the two cars. However, Bragg was cross-examined about the distance and the potential obstructions, and credibly resolved any doubts. He stated that he used binoculars to assist him, thereby explaining how he was able to see the informant some 300 yards away. (*Id*. at 40:14–18.) He also

---

[2] Tucker requested the police reports of the previous two controlled buys at the July 9 hearing, when he first learned that they existed. (Tr. at 34:22–35:4.) The Magistrate Judge noted that he would keep the issue under advisement when considering the Motion but did not otherwise address it during or after the hearing. Because the Court believes that these reports should be provided to Tucker pursuant to Federal Rule of Criminal Procedure 16, the Court will order the United States to disclose them.

acknowledged that there were several trees in the park, but that because it was the end of March at the time of the buy, there was no foliage to obstruct his view. (*Id.* at 41:10–18.) The Court finds no reason to doubt Bragg's credibility on this issue and adopts this finding of fact.

Next, Tucker objects to the finding that Bragg checked the informant for drugs before sending him to make the controlled buy from White. Tucker points out that Bragg made no mention of this fact in his post-incident report. However, the Court finds no issue with this omission and does not believe that it detracts from Bragg's credibility. It is unreasonable to expect police reports to contain a second-by-second breakdown of an officer's actions at the risk of finding their testimony unbelievable.

Finally, Tucker objects to the finding that police officers had heard rumors that White carried guns or associated with people who carried guns. Importantly, the Magistrate Judge did not find—and Tucker does not argue—whether the rumor was true or false, but simply that such a rumor existed. Tucker notes that Sauro did not mention the rumor in his police report; Sauro's testimony about the rumor was vague and speculative; and White did not have any prior gun charges or convictions. However, rumors are inherently vague and speculative and intangible, and requiring Sauro to specify where he heard the rumor or who else heard the rumor would be a nearly impossible task. Likewise, requiring police officers to note every rumor about an individual in an official police report in order to prove the rumor's existence would be overly burdensome and potentially prejudicial. Further, the fact that White did not have a gun related offense in his record does nothing to combat the existence of a rumor like this—rumors are, by their very nature, nothing more than unproven speculation. Finally, the Court notes that Tucker did not question Sauro about this rumor when he had the opportunity, thereby missing the chance to clarify some of these issues.

The Court, like the Magistrate Judge, finds Sauro's testimony on this issue credible and adopts this finding of fact.

## II. MOTION TO SUPPRESS

Tucker, in his Motion to Suppress the evidence found during this incident, argued that his Fourth Amendment rights were violated when Sauro stopped him, detained him, and frisked him, because Sauro did not have a reasonable suspicion that Tucker was engaging in criminal activity. Because the frisk was unconstitutional and led to the finding of the gun, which led to Tucker's arrest and subsequent search, Tucker also argued that the drugs found pursuant to that search should be suppressed as fruit of the poisonous tree. The Magistrate Judge recommended denying Tucker's Motion, finding that the actions of the officers did not violate the Fourth Amendment. Tucker now objects to this recommendation.

When reviewing valid objections to a Magistrate Judge's recommendation, the Court considers the issue de novo. Fed. R. Crim. P. 59(b)(1), (3); *see also* 28 U.S.C. § 636(b)(1). After de novo review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. CONST. amend. IV. Generally, the Fourth Amendment requires that any search or seizure be predicated on probable cause. *Terry v. Ohio*, 392 U.S. 1, 20 (1968). However, the Supreme Court has recognized that "an officer may approach a person to investigate possible criminal behavior even though probable cause to make an arrest does not exist." *United States v. Brown*, 913 F.2d 570, 571 (8th Cir. 1990) (citing *Terry*, 392 U.S. at 22). Additionally, an officer may "conduct a patdown search

of the individual[] under investigation if he or she has reason to believe that such persons are armed and dangerous." *Id.* (citing *Terry*, 392 U.S. at 30).

For a *Terry* investigatory stop to be constitutional, an officer must have "a reasonable suspicion that the person has committed or is about to commit a crime." *United States v. Johnson*, 326 F.3d 1018, 1022 (8th Cir. 2003). In assessing the reasonableness of the action, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry*, 392 U.S. at 21–22 (citations omitted). Additionally, "[w]hen a team of law enforcement officers is involved in an investigation, the issue is whether all the information known to the team provided 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the investigative stop." *United States v. Winters*, 491 F.3d 918, 921 (8th Cir. 2007) (quoting *United States v. Robinson*, 119 F.3d 663, 666–67 (8th Cir. 1997).

The Court finds that Officer Sauro had a reasonable, articulable suspicion to detain Tucker. Sauro was aware that White had just completed a sale of crack-cocaine, and that he had a history of such transactions, as evidenced by the two prior controlled buys. As Sauro moved in to arrest White, he was warned over the radio to beware of the two men at White's vehicle that appeared to be buying from White. Once Sauro could see White's vehicle, he saw two men at the vehicle, and one of them was actively reaching into it. Further, once he arrived at the vehicle, Sauro could see a bag of marijuana on the center console. When considering the totality of the circumstances, Sauro clearly had a reasonable suspicion that Tucker was engaged in criminal activity.

Naturally, whether reasonable suspicion exists in a given situation is a fact specific inquiry. However, Eighth Circuit precedent is helpful and instructive in determining what constitutes reasonable suspicion, and there are several relevant cases which help guide the Court's finding

here.  For instance, in *United States v. Collins*, officers watched a defendant enter a garage where they knew that drugs had frequently been sold, watched him emerge from the garage only a short time later, and knew that the alleged drug dealer was home at the time.  883 F.3d 1029, 1033 (8th Cir. 2018).  The officers then followed the defendant's car a short distance and pulled him over to investigate.  *Id.* at 1031.  The Eighth Circuit held that the officers had reasonable suspicion to stop the defendant when considering the totality-of-the-circumstances and the officers' experiences.  *Id.* at 1032–33.  The court also expressly rejected defendant's attempts to "challenge each individual factor in isolation," because "[t]he totality-of-the-circumstances test 'precludes this sort of divide-and-conquer analysis.'"  *Id.* at 1032 (quoting *United States v. Quinn*, 812 F.3d 694, 698 (8th Cir. 2016)).

In *United States v. Bustos-Torres*, a police officer witnessed what he believed—but could not confirm—was a drug deal in the parking lot of an area known as a drug hotbed.  396 F.3d 935, 942 (8th Cir. 2005).  Then, just a few minutes later, he witnessed nearly the exact same sequence of events with a new "buyer," though once again he could not confirm that a drug deal had taken place.  *Id.* at 939–40.  The Eighth Circuit found the subsequent stop and search of the new buyer constitutional because "an experienced narcotics officer reasonably would have believed the second car, like the first, was likely on the scene to buy drugs" and because "[h]e could point to the location and the first transaction as the articulable facts giving rise to his suspicion." *Id.* at 943.  Further, the court dismissed Bustos-Torres' argument that "the district court's reasoning transforms into a suspect anyone who associated with [the alleged dealer] after the first transaction." *Id.* at 942.  The court declined to "entertain the hypothetical over the actual" and found that the actual facts supported reasonable suspicion. *Id.*

Both of these cases are sufficiently analogous to the present one to inform the Court's analysis. While there are naturally some factual differences, the Court nevertheless finds them instructive and largely applicable. *See also United States v. Buchannon*, 878 F.2d 1065 (8th Cir. 1989) (finding reasonable suspicion on facts similar to *Bustos-Torres*).

Tucker points to *United States v. Clay* to argue that reasonable suspicion did not exist here. 640 F.2d 157 (8th Cir. 1981). In *Clay*, police had entered a home under a valid search warrant searching for drugs and guns. *Id.* at 158. While police were searching the home, an unknown individual approached the home and knocked on the door. *Id.* An undercover officer answered and demanded that the individual enter the home, where he was then searched. *Id.* In finding the search unreasonable, the Eighth Circuit cited the fact that there was literally nothing that "establishe[d] a nexus between the contraband discovered inside the house and appellant at the time he was stopped and frisked." *Id.* at 161. The court further held that "[a] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 160 (quoting *Ybarra v. Illinois*, 444 U.S. 85, 86 (1979)).

However, the Eighth Circuit, in *United States v. Patterson*, muddied the holding of the *Clay* court when it considered the same factual scenario, with only nominal differences. 885 F.2d 483 (8th Cir. 1989). Despite the factual similarities, the court found that *Clay* was a "fact-driven decision" before holding that the police's search was reasonable. *Id.* at 484.

It remains true that "a person's mere propinquity to others independently suspected of criminal activity" is not, by itself, sufficient to justify a seizure. But the Court struggles to find a significant difference between the additional corroborating facts here and the corroborating facts of *Collins* and *Bustos-Torres*. In both of those cases, police were unaware of the eventual

defendant until witnessing that defendant come into contact with a suspected drug dealer. Despite that, the police officers used their training and experience to determine that the defendant was likely purchasing drugs, and not merely conversing with the suspected drug dealer. While police in *Collins* and *Bustos-Torres* could not have been certain that the defendants had purchased drugs, there was reasonable suspicion on which to further investigate. So too is the case here.

Tucker additionally argues that, even if the seizure was constitutional, Sauro's subsequent pat down was not. Like seizures, protective searches for weapons are constitutional, without probable cause, "'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous.'" *United States v. Davis*, 202 F.3d 1060, 1061 (8th Cir. 2000) (quoting *Terry*, 392 U.S. at 30). "[T]he 'officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir. 2002) (quoting *Terry*, 392 U.S. at 27).

"Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction." *Bustos-Torres*, 396 F.3d at 944 (citing *United States v. Robinson*, 119 F.3d 663, 667 (8th Cir. 1997). This holding has been repeatedly adopted by the Eighth Circuit. *See United States v. Gaffney*, 789 F.3d 866, 870 (8th Cir. 2015); *United States v. Crippen*, 627 F.3d 1056, 1063 (8th Cir. 2010); *United States v. Stigler*, 574 F.3d 1008, 1010 (8th Cir. 2009) (noting the defendant's "actions created a reasonable suspicion that he was involved in drug trafficking, which on its own justified the protective pat-down."). Because Sauro had a reasonable suspicion that Tucker was involved in a drug transaction, Sauro's pat down was

reasonable.

In conclusion, because the seizure and subsequent pat down of Tucker did not violate Tucker's Fourth Amendment rights, the Court will adopt the Report and Recommendation and deny Tucker's Motion to Suppress.[3]

### III. MOTION FOR DISCLOSURE OF INFORMANT

Tucker additionally moved to compel the government to disclose the identity of the informant that was used, and now objects to the Magistrate Judge's denial of that Motion. "The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential." *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). The district court will reverse an order of a magistrate judge only if the order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.1(b)(2); *Chakales v. Commissioner of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996).

The government has the right to withhold the identity of its informants, however this privilege "'must give way'" if "'the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause. . . .'" *United States v. Lapsley*, 334 F.3d 762, 764 (8th Cir. 2003) (quoting *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957)). The Court's task is to "weigh 'the defendant's right to information against the government's privilege to withhold the identity of its confidential

---

[3] It is not clear whether Tucker objects to the Magistrate Judge's recommendations regarding the suppression of the drugs found on Tucker. Nevertheless, the Court agrees with the Magistrate Judge and will deny his Motion to Suppress as it relates to evidence of the drugs, because the drugs were found during a lawful search incident to arrest. *See United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.").

informants.'" *Id*. at 763–64 (quoting *United States v. Fairchild*, 122 F.3d 605, 609 (8th Cir. 1997). The defendant bears the burden of demonstrating a need for disclosure. *Id*. at 763 (citing *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998)).

In making this determination, the Court considers the "particular circumstances of each case, [including] the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62. The Eighth Circuit instructs that "perhaps the most important factor . . . is whether the [informant's] information is material to the defense." *Lapsley*, 334 F. 3d at 764 (citing *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991)). Evidence is material if there is a reasonable probability that, if disclosed to the defense, the result of the proceeding will be different. *Id.*

Tucker argues that the informant's identity and exposure to questioning is relevant and necessary for his defense because the informant's information formed "the sole basis for the reasonable suspicion [to] detain and frisk Mr. Tucker. . . ." (Def.'s Obj. to R. & R. at 10.) Tucker asserts that "the notion that the purported narcotics transaction actually occurred stands solely on the supposed statements of the informant to Officer Bragg." (*Id.* at 12.) Thus, Tucker claims, the informant must be questioned to establish whether reasonable suspicion existed.

However, in making this argument Tucker seems to rely on the Court refusing to find certain facts. To that point, Tucker claims that "Bragg did not credibly and independently observe a controlled buy" and that the "pre- and post-purchase searches" of the informant did not occur. (*Id.* at 7, 10.) But the Court does find these facts, and when considering these facts in their proper context, it is clear that the informant's statements form only part of the reasonable suspicion that Tucker was involved in a drug deal. The officers that day still knew that the informant spent time at White's vehicle, still knew that he came back with drugs that he did not leave Bragg's car with,

knew that Tucker and another individual approached White's car immediately thereafter, and knew that White had a bag of open marijuana out on his center console. When considering the totality-of-the-circumstances, reasonable suspicion exists on just these facts alone.

Because the informant's potential testimony is unnecessary to decide that reasonable suspicion existed, the Court does not find that Tucker has met his burden of showing that disclosure is needed. Accordingly, the Court does not find that the Magistrate Judge's Order is clearly erroneous or contrary to law.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 19] is **DENIED**.

2. Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 20] is **DENIED** as moot.

3. Defendant's Motion for Disclosure and to Make Informants Available for Interview [Docket No. 25] is **DENIED**.

4. The Report and Recommendation of Magistrate Judge Schultz [Docket No. 45] is adopted.

5. The United States is ordered to turn over immediately the police reports completed pursuant to the first two controlled buys made by the informant.

DATED: December 19, 2018　　　　　　　　　　　_____John R. Tunheim_____
at Minneapolis, Minnesota.　　　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　　　　　United States District Court