# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>MARQUIS WILLYJOHN TUCKER,<br><br>Defendant. | Criminal No. 18–89 (JRT/DTS)<br><br>**ORDER** |

Erica H. MacDonald, United States Attorney, and Jeffrey Paulsen, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Keala C. Ede, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

Defendant Marquis Willyjohn Tucker has filed a Motion to Supplement the Motions Hearing Record and for Reconsideration of the Court's Order adopting the Magistrate Judge's Report and Recommendation. (Mot. to Suppl., Jan. 22, 2019, Docket No. 61.) Tucker argues that the Court should reconsider its holding that reasonable suspicion existed to support a warrantless stop and search that led to his arrest. Because the new evidence provided by Tucker does not undermine the factual or legal basis for its prior holding, the Court will deny the Motion.

## BACKGROUND

On June 14, 2018, Tucker filed a motion to suppress evidence that was discovered

pursuant to a warrantless search of his person on March 27, 2018.[1]  (Mot. to Suppress, June 14, 2018, Docket No. 19.)  On December 19, 2018, the Court adopted Magistrate Judge David T. Schultz's Report and Recommendation ("R&R"), denied Tucker's motion, and held that the warrantless search was constitutional because it was based on reasonable suspicion.  (Order, Dec. 19, 2018, Docket No. 53.)  Specifically, the Court stated that:

> Officer [Joseph] Sauro had a reasonable, articulable suspicion to detain Tucker.  Sauro was aware that White had just completed a sale of crack-cocaine, and that he had a history of such transactions, as evidenced by the two prior controlled buys.  As Sauro moved in to arrest White, he was warned over the radio to beware of the two men at White's vehicle that appeared to be buying from White.  Once Sauro could see White's vehicle, he saw two men at the vehicle, and one of them was actively reaching into it.  Further, once he arrived at the vehicle, Sauro could see a bag of marijuana on the center console.  When considering the totality of the circumstances, Sauro clearly had a reasonable suspicion that Tucker was engaged in criminal activity.

(*Id.* at 8.)

Because the facts relevant to the motion to suppress were established almost exclusively from the testimony of two St. Paul Police officers, Joseph Sauro and Colby Bragg,[2] the Court necessarily credited that testimony in reaching its conclusion.  Indeed, the Court specifically credited Bragg's testimony regarding his use of a confidential

---

[1] The facts relevant to that warrantless search are summarized in the Court's Order Adopting the Magistrate Judge's Report and Recommendation.  (*See* Order, Dec. 19, 2018, Docket No. 53.)

[2] Sauro and Bragg were the only individuals to testify, and the only other evidence presented during the motion to suppress hearing was footage from Bragg's body-camera as well as maps of the neighborhood in which Tucker was arrested.

informant to make two controlled drug purchases from a man named Kevin White prior to March 27, 2018. (*Id.* at 5.) The Court credited Bragg's testimony in this regard because "Bragg testified and was cross-examined extensively about the prior controlled buys, provided the location and approximate location of them, and stated that White drove the same vehicle in all three of the controlled buys where he used the informant." (*Id.*)

Because Bragg created contemporaneous police reports purportedly documenting these two prior controlled purchases, and because those reports had not yet been produced to Tucker at the time of the motion to suppress hearing, the Court ordered the United States to produce those reports, (*id.* at 14), which was done on January 3, 2019, (Mot. to Suppl. at 2). After reviewing them, Tucker believes that they impeach Bragg's testimony regarding the two controlled purchases. He therefore moves the Court to reconsider its reliance on that testimony and to reconsider its ultimate determination that Sauro's decision to detain Tucker was based on reasonable suspicion. (*Id.* at 3.)

## ANALYSIS

"'None of the Rules of Criminal Procedure authorizes a generic motion to reconsider." *United States v. Grant*, 703 F.3d 427, 434 (8th Cir. 2013) (quoting *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010)). However, "motions to reconsider are 'a well-established procedural rule for criminal, as well as civil, litigation.'" *Id.* (quoting *United States v. Healy*, 376 U.S. 75, 80 (1964)). In addressing motions to reconsider in the criminal context, courts ordinarily apply the same standards as those used in civil cases. *Rollins*, 607 F.3d at 502. Like a Rule 59(e) motion, a motion to reconsider should not be employed to relitigate old issues, but to "afford an opportunity for relief in extraordinary

circumstances." *Dale & Selby Superette & Deli v. U.S. Dep't of Agric.*, 838 F. Supp. 1346, 1347-48 (D. Minn. 1993).

In this case, Tucker is essentially asking the Court to reexamine his motion to suppress de novo, with the benefit of new evidence in the form of the police reports. Because the reports were not produced until after the motion to suppress hearing but would have been highly relevant to that hearing, the Court will reconsider its Order and credibility determinations de novo.

As stated above, the Court credited Bragg's testimony regarding the prior controlled purchases. At the motion to suppress hearing, Bragg testified that he had conducted two controlled purchases from a man named Kevin White in early 2018. (Tr. of Mot. Hearing ("Tr.") at 15:22-16:01, July 16, 2018, Docket No. 34.) Bragg did not provide specific dates; however, he stated that the first purchase took place in the Twins Market parking lot in St. Paul and the second took place about six blocks from the Twins Market. (*Id.* at 16:19–17:9.) He also stated that the purchases were made while White was in a tan SUV. (*Id.* at 17:22–18:4.) Finally, Bragg testified that the confidential informant purchased crack cocaine from White on both occasions. (*Id.* at 16:19–17:11.)

The recently produced police reports, which supposedly document these prior purchases, are devoid of any real details. (*See* Mot. to Suppl., Ex. 1, Jan. 22, 2019, Docket No. 61.) They merely state that Bragg, with a confidential informant, executed controlled purchases on February 22, 2018, and March 13, 2018, and that crack-cocaine was purchased. (*Id.* at 2, 7-8.) They do not note that Kevin White was the target, describe the car White was driving when the purchases were made, or describe the events that took

place in any detail. Further, the only addresses listed as the locations of incidents are the addresses that Tucker says correspond to various St. Paul police department buildings. (Mot. to Supplement at 3.)

There is some disconnect between Bragg's contemporaneously filed reports and Bragg's testimony at the motion to suppress hearing, in that Bragg's testimony about the controlled purchases was significantly more detailed than his own police reports regarding the same purchases. Tucker argues that this disconnect undermines and impeaches Bragg's testimony to the extent that the Court should not rely on it. He argues that, because Bragg's testimony was the only evidence presented about the prior purchases, the Court should not find that the two prior purchases occurred.

While the Court is undoubtedly concerned with the lack of detail provided in the two earlier reports, they do not impeach Bragg's testimony to the point that the Court doubts whether the controlled purchases took place. First, the fact that Bragg's testimony contained more details than his contemporaneously filed reports does not in and of itself impeach his testimony. Nothing in the reports directly contradicts or is inconsistent with Bragg's testimony, and there is no evidence that Bragg was untruthful during his testimony. Second, there is additional corroborating evidence which supports Bragg's testimony. After the third controlled purchase, which led to Tucker's arrest, Bragg created a third report. (*See* Response, Ex. 1, Jan. 29, 2019, Docket No. 65-1.) This report, dated March 27, 2018, contains many of the details that were lacking in the earlier two, such as the location of the prior buys and the name of the target, Kevin White. (*See id.* at 2.) This report also matches the testimony that Bragg gave at the motions hearing. Thus, there is

contemporaneous and non-testimonial evidence that supports Bragg's testimony and buttresses the Court's factual determination that the two prior buys occurred.

Because the new evidence presented by Tucker does not change the outcome of the Court's original reasonable suspicion analysis, the Court declines to reconsider its December 19, 2018 Order.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Supplement Motions Hearing Record [Docket No. 61] is **DENIED** as moot, and

2. Defendant's Motion for Reconsideration [Docket No. 61] is **DENIED.**

DATED: February 25, 2019                    ____s/John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                           Chief Judge
                                        United States District Court